### THE UNITED STATE DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
### CIVIL ACTION

**KALIM A. BHATTI**
4520 Elwill Drive
Harrisburg, PA 17112           :     CIVIL ACTION
              Plaintiff     :     No.:
      v.                :
                        :     **JURY TRIAL DEMANDED**

**THE REPUBLICAN CAUCUS OF THE**    :
**PENNSYLVANIA HOUSE OF**
**REPRESENTATIVES**                :
Main Capitol Building          :
Harrisburg, PA 17120          :
                        :
**JENNIFER L. JONES**          :                      :
c/o Republican Caucus        :
                        :
**JOHN DILLE**               :
c/o Republican Caucus        :
                        :
**STEPHEN MISKIN**          :
c/o Republican Caucus        :
                        :
**JOHN AND JANE DOE #1-!0,** in each of their    :
Official and Personal/ Individual Capacities    :
c/o Republican Caucus        :
              :

---

### COMPLAINT

     Plaintiff, KALIM A. BHATTI. by and through his attorney Mark D. Schwartz,

Esquire hereby files the following Complaint in accordance with the numbered paragraphs

and avers the following:

### NATURE OF THIS ACTION

     1.     Prior to his firing, Plaintiff Kalim Bhatti. ("Plaintiff") had been an

employee of the Republican Caucus of the Pennsylvania House of Representatives,

1

working specifically as a photographer. He has previously filed a Charge with the Equal Employment Opportunity Commission ("EEOC") with respect to discrimination. Accordingly, he is seeking relief pursuant to the federal law Title VII and various Pennsylvania common law theories.

2.      Plaintiff was fired from his employment on April 30 ,2018 in retaliation and in violation of his Federal and State constitutionally protected characteristics of his race, national origin and his faith religion.  His firing was contrary to the Republican Caucus' own rules, as well as U.S Constitutional First Amendment protections. Accordingly, Plaintiff seeks to recover damages under 42 U.S.C. Sections 1981,1983 as well as Title VII of the Civil Rights Act of 1964 as amended,  and pursuant to Pennsylvania's common law, set forth in the Counts that follow.   After his firing, Defendants proceeded to further retaliate against him in opposing his unemployment compensation.

3      As a result of Defendants' unlawful behavior and practices, Plaintiff seeks back pay, front pay compensatory and punitive damages (where applicable), together with attorneys' fees, plus costs and expenses of this suit to redress the effects of Defendants' illegal, retaliatory, and discriminatory policies and procedures.  Plaintiff also seeks equitable relief with respect to ensuring that Defendants no longer continue such practices.

## JURISDICTION AND VENUE

4.      This Court, in accordance with 28 USC 1331, has jurisdiction over Plaintiff's claims for relief, since those claims arise under the law of the United States, based in part on 42 U.S.C. Section 1983 and 42 U.S.C. Section 1981.  Jurisdiction is also invoked pursuant to 28 U.S.C. §1367, granting this Court supplemental or pendent jurisdiction over the state claims under the laws of Pennsylvania, because the state claims

and federal claims are so interrelated that they are the same case or controversy under Article III of the United States Constitution.

5.      This Court may properly maintain personal jurisdiction over the Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over the Defendants and to comply with the traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

6.      Pursuant to 28 USC 1391(b)(1) and (b)(2), venue is properly laid in this district because all the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

7.      Plaintiff has properly exhausted his administrative remedies by timely filing a charge of Discrimination and Retaliation with the EEOC and by filing the instant lawsuit within ninety (90) days of receipt of the right to sue letters issued by the EEOC on August 13, 2018 and received thereafter.

## **PARTIES**

8.      Plaintiff, KALIM BHATTI ("Plaintiff" or "Bhatti") is an adult individual resident and citizen of the Commonwealth of Pennsylvania residing at 4520 Elwill Drive, Harrisburg, PA 17112.

9.      Defendant THE REPUBLICAN CAUCUS OF THE PENNSYLVANIA HOUSE OF REPRESENTATIVES ("Defendant Caucus") consists of the current majority party in control of the Pennsylvania House of Republicans located at the Main Capitol Building in Harrisburg, Pennsylvania.  Plaintiff's place of employ was in a department

within the House Republican Caucus, which along with the Democratic Caucus of the Pennsylvania House of Representatives, comprise the entirety of the Members of the Pennsylvania House of Representatives. In concert with CORE (a bipartisan entity which includes both the Chief Clerk and Comptroller of the House of Representatives as well as their respective employees), the two Caucuses also serve as employers within the House of Representatives. The Pennsylvania House of Representatives, in turn, is one of two component parts of the Pennsylvania General Assembly, the legislative branch of Pennsylvania's government. Thus, at all relevant times, Defendant Caucus was an employer within the meaning of applicable federal law. Similarly, for purposes of the Pennsylvania Human Relations Commission Act, Defendant Caucus was Plaintiff's employer. Defendant Caucus has continuously employed the requisite number of people to qualify it for applicability of civil rights and disabilities acts.

10.     Together with the above-referenced Defendant Caucus, those who were involved with and/or ratified Plaintiff's firing, are Ms. Jennifer L. Jones, Mr. John Dille, Mr. Stephen Miskin, as well as John and Jane Does #1- 10 who represent additional individuals who may have been involved in Plaintiff's firing.

## FACTS

11..     Plaintiff incorporates paragraphs 1-10 above as if set forth at length herein.

12.     Long ago, Plaintiff was brought from Kenya to this country where he grew up in Harrisburg, PA. His parents always stressed the importance of ethics and the need to cooperate with others, including his superiors in the workplace.

13.     Plaintiff attended Capitol College and earned a Bachelor's Degree in electronics in 1987. For the next five years, he loaded and unloaded trucks for five years at Consolidated Freightways. He then worked at a Lexus car dealership for seven months as

4

a technician. Given that his true passion has been and remains photography, he worked as a photographer at the Middletown Press & Journal for the next   four years where he won various awards.

14.     Plaintiff subsequently started work for the Caucus as a contract photographer in late 1997. At that time, the Caucus' Photography Supervisor went on National Guard Duty. Ms. Jennifer L Jones was promoted from Photographer to Photography Supervisor. After several months as a contract photographer, Plaintiff became a full-time employee in April of 1998. His job specification was "Photographer" with outlined responsibilities with respect to taking photographs and accepting assignments from Communications Coordinators. His specific position has been categorized as "Communications Specialist 1- Photographer". He was required to register as a Republican. Subsequently he was criticized by fellow employees for voting for Presidents Clinton and Obama.

15.     Plaintiff's immediate supervisor throughout his tenure has been Jennifer L. Jones, the Photo Manager in the Multi-Media Department. Ms. Jones has continuously and repeatedly discriminated against Plaintiff, taking a light assignment load for herself while deliberately saddling him with low pay, a low job title, and as many as 100 Caucus members that he was required to cover.  As an example of a heavier work load, for many years a typical three-day session week required that Plaintiff be scheduled for not only House Floor assignments, but also press conferences and tour group photos. In contrast, within the last year or two, the other available photographer was required to cover one session day. Ms. Jones would never cover a session except upon an urgent non-scheduled request. In fact, Plaintiff had to cover the great majority of the session days.  However,

those with comparable responsibilities and far fewer members to cover had salaries 20-30 percent greater than Plaintiff.

16.    Ms. Jones answers to John Dille, Video Department Supervisor, who in turn reports to Mr. Stephen Miskin, Caucus Communications Supervisor, who in turn gets his direction from the House Majority Leader.

17.    Upon information and belief, Ms. Jones has had personal relationships with other Caucus employees, including a supervisor and another employee who has filled in for Plaintiff. Ms. Jones has exhibited a difficult management style as directed to Plaintiff. Moreover, she acted fraudulently and deceptively by scheduling herself for few assignments, but actually having Mr. Justin Conner perform them. Mr. Conner has been a problem employee, but retains an employee thanks to being a relative of former Speaker, now felon, John Perzel.  Mr. Conner was removed from the IT Department and has since been in Plaintiff's Multi-Media Department.

18.    In addition to his job, Plaintiff had previously been allowed to do a certain amount of photography freelance work. However, Messrs. Dille and Miskin have further discriminated against him and cost him needed additional income by denying him certain freelance opportunities.

19.    Plaintiff's excellent professional reputation was exemplified by the call he received on September 11, 2001 from the Associated Press to cover an airplane down in Western Pennsylvania.  Plaintiff covered the AP assignment for two days. Upon his return, he found that Ms. Jones had convinced herself and told others that Plaintiff was a terrorist and should be reported to the authorities.  This instance alone is symptomatic of Ms. Jones discriminatory attitude and Defendant Caucus' system, motive and intent with

respect to the harassment, retaliation and discrimination which penalized Plaintiff and eventually got him fired due to his race, color, age, religion, and his national origin.

20.    As with her initiative to have Plaintiff arrested as a terrorist, Ms. Jones continued her harassment of Plaintiff, despite the fact that other employees and House members would periodically try to intercede on Plaintiff's behalf.  At best, the harassment would abate only temporarily.

21.    Approximately five years ago, Plaintiff began strictly performing his Muslim religious obligations by leaving the Capitol premises to visit the Mosque located in the Italian Lake section of Harrisburg.  With morning prayers at home, then a mid-day prayer at lunch he would visit the Mosque. He would then again pray after work and then before bed. Customarily Plaintiff would observe his mid-day prayers during his lunch hour, leaving for the Mosque at 2 p.m., reaching the Mosque at 2:15 p.m. and then returning by 3 p.m. Prior to making it a practice to pray at the Mosque, Plaintiff would pray at the Capitol, in either a utility closet or a windowless room where the department's laminator was located.  Periodically, Mr. Dille would deliberately enter the room and interrupt Plaintiff.  At all times, Caucus representatives were advised of Plaintiff's practices       .

22.    Coincidentally, once he began observing his prayer regimen, Plaintiff's repeated requests for an additional salary increment were continuously disregarded. Plaintiff's repeated requests for evaluations were also postponed or entirely ignored.  Each time Plaintiff approached Supervisor John Dille about the lack of an evaluation, Mr. Dille would say, "I gotta get your eval done." But, in fact, nothing was done.

23.    In 2014, after Plaintiff did receive a very positive review, Mr. Dille

promised him a salary increase. Weeks turned into months and then an entire year without a raise. Mr. Dille would say that Mr. Miskin was just so busy.

24.     Subsequently, once in the hallway of the Pa. House, on the way to an assignment, Plaintiff was approached by Mr. Miskin who while walking said "I know where you are, we just need to get that asshole out (of the Governor's Office) who blue-lined our budget." This was in direct reference to Republican Governor Tom Corbett. In frustration, Plaintiff replied "You can't buy experience like you have in me." Mr. Miskin evidently took offense to being approached and upon information and belief held it against Plaintiff.

25.     Aside from the above-quoted example of Mr. Miskin's foul mouth, Plaintiff recalls Mr. Miskin's offensive communication to a videographer/producer: "How did you like that blowjob I gave you" referring to past praise by Mr. Miskin.

26.     Then there is further evidence of the sort of contempt Mr. Miskin and Defendant Caucus has for Muslims in general and Plaintiff in particular which typifies the illegal and disgusting working environment that created and maintained regarding the Plaintiff. For example, Mr. Miskin and the Caucus have shown their intolerance for Plaintiff and members of his faith in the summer of 2008. A routine resolution supported by Plaintiff was to be voted on, welcoming the leader of the Muslim faith to Harrisburg. The resolution was doomed as a result of Republican Daryl Metcalfe's insensitive and bigoted remarks that "the Muslims do not recognize Jesus Christ as God." This caused an uproar in the House that extended to the Jewish community when Metcalfe told Jewish state representative Josh Shapiro, now Pennsylvania Attorney General, that Metcalfe would "council" Shapiro to help find Jesus in his life so as to avoid the possibility of Shapiro going to hell. While many members of the House criticized Metcalfe, Miskin was

8

interviewed and said that he did not find Metcalfe's comments to be offensive. Moreover, as reported in an article of the Jewish Exponent, "…Steve Miskin, spokesman for House Minority Leader Sam Smith, said that Metcalfe has been unfairly maligned, and that the Republican caucus is sticking by him." With there being only one Muslim elected to the Legislature, it took approximately three years for the Caucus to pass a simple resolution recognizing the significance of the Muslim period of Ramadan. This was finally accomplished in May of 2018.

27.    In 2016, HR leveled various complaints against Plaintiff and prepared a "Counseling Session Sheet" suggesting that on several instances Plaintiff missed or was late to assignments or left before the end of an assigned event.  Plaintiff prepared a point-by-point response with evidence and attachments indicating that the accusations were incorrect.  Not surprisingly, Plaintiff was not able to submit them. This evidenced Ms. Jones' prescription for setting up Plaintiff for failure. Photo-shoots rarely happen on time and Plaintiff was often scheduled for competing events in different places at the same time. Historically, camaraderie between photographers of the different caucuses or branches of government resulted in the sharing of photos that would otherwise be missed. Additionally, a large percentage of the time, House members were themselves late for photo-shoots.  Moreover, members never criticized Plaintiff's performance.  Simply stated, consistent with her determination that Plaintiff was a terrorist and that he angered a religiously intolerant Mr. Miskin, write-ups were simply a pretext for Ms. Jones to harass, discriminate and eventually get Plaintiff fired.

28.    Plaintiff even went so far as to try to be transferred to the Print Shop with the assistance of Representative Dan Moul.  However, Plaintiff was not allowed to transfer into a position there.

29.     In January, 2018 Plaintiff was given an underground parking space due to satisfactory twenty-year service.

30.     In February of 2018, after repeated requests for salary increments had been ignored, Plaintiff requested a meeting with Mr. Miskin, stating that Plaintiff had worked without increased salary increments for over four years. Instead, a negative evaluation followed and Plaintiff was never afforded the opportunity to present arguments that he had planned.

31.     The next calculated step for Ms. Jones, Mr. Dille and Mr. Miskin to rid themselves of Plaintiff was the preparation of an "Employee Performance Evaluation" captioned "Please complete and return to HR on or before this date: 4/10/2018." It was signed by Mr. Dille on April 16, 2018.  The performance evaluation indicated that Plaintiff:

- "Manages time, is mostly punctual and usually schedules leave in advance.";

- that "When called upon [he is] willing to take on and able to accomplish new assignments and helping other team members to improve the department/office, morale and teamwork.";

- is "Highly knowledgeable of all aspects of job function responsibilities." Despite these specific positive comments, this evaluation also contained nebulous pretextual language such as:

- "Needs to improve decision making and overall management skills.", and

- "Needs to improve overall aspects of professionalism:

Finally, comments by 1st Evaluator Dille were also conclusory, stating that "Kalim's job performance over the past year has not been up to his same level as in past years." Further, Plaintiff was accused of not communicating with members or their staff.  Plaintiff took

10

issue with this pretextual evaluation and refused to sign it.  It is noteworthy that at no time did Plaintiff receive any criticism from members as to his performance. In fact, it has been quite to the contrary.

32.     The Caucus and the other Defendants are supporting cast members of a Pennsylvania State Capitol culture that avoids hiring minorities in the first place. For the very few who are hired, it then denigrates and humiliates them. Plaintiff has witnessed the fact that of the roughly 600 people employed by the Caucus, only four have been people of color like Plaintiff. In fact, Plaintiff was the only Muslim,

33.     On April 30, 2018 Plaintiff was summoned to go to the Caucus HR Department. As he left the Ryan Office Building, taking the outside route, he was shocked to find that he was not able to enter the Main Capitol Building where HR is located. His employee badge ID no longer worked. Plaintiff gained entrance by following someone else into the building.

34.     Upon arriving at the HR office, Plaintiff was flatly informed by Ashley Grim that his employment termination was "not negotiable".

35.     Plaintiff was then escorted to his office with two House Security guards and given two boxes to collect his belongings. Fellow employees that he encountered were shocked that he was fired from his employment. Plaintiff was then escorted out of the Capitol Building by House Security in the plain view of coworkers. This display was wholly unnecessary and simply a means to demean Plaintiff in the eyes of his co-workers, who were left to conclude that Plaintiff did something wrong, possibly criminal. Clear bias and fear seemed to be uppermost in the minds of Capitol Police when Plaintiff returned the next day after his firing to obtain several letters of reference. Moreover, in

coming across Capitol staff, Plaintiff had to make it clear that he could hold his head up

high, did not steal anything or do anything illegal.

36.     Plaintiff received a post-firing call from Representative John Maher who

related a story to Plaintiff of the fact that several years before, Mr. Dille and his crew

visited Maher's district near Pittsburgh to conduct a multi-day shoot. The shoot was a total

failure and waste of time, money and resources because Mr. Dille had neglected to bring

microphones for the shoot. Upon information and belief, Mr. Dille suffered no

consequences for this failure, let alone be terminated as was Plaintiff.

37.     Despite the fact that Plaintiff received sympathetic calls from some-

coworkers, and understands that Defendant Caucus put out a neutral group email stating

that Plaintiff was no longer employed by the House of Representatives, Plaintiff has not

been able to secure suitable employment, even failing to obtain a job with the Executive

branch's Commonwealth Media Services Department.

38.     Just before his firing, Plaintiff made approximately $46,000 plus benefits

and remained, without promotion, a "Communications Specialist I." A comparison to

other comparable jobs in the Capitol shows that Plaintiff was severely underpaid and

overextended as an employee with the responsibility of covering 100 members, as

opposed to others who have more significant titles/pay categories and who cover as few as

15 members. Other photographers in the Capitol have been paid more than Plaintiff, who

maintains that his minority status has been the reason for these discrepancies.

39.     But for his firing on April 30, 2018 he would have been eligible in five

years for a pension and continued benefits. Moreover, he has been deprived of payment

covering accumulated vacation days and sick time.

40.    Up until his firing, Plaintiff continued to protest the discrimination that he faced.

41.    Upon information and belief, Plaintiff, as a member of a protected age class has been replaced by a younger employee.

42.    Plaintiff alleges that the discriminatory practices of Defendants were continuing in nature, which persisted up to the point of termination.

43.    Defendant Caucus has committed post-employment retaliation against Plaintiff which includes opposing his obtaining unemployment compensation.

44.    On August 9, 2018 Plaintiff filed a Charge with the EEOC stating "I believe that Respondent subjected me to discrimination and retaliation because of my race, my national origin, my religion, my age, and my protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended; the Age Discrimination in Employment Act of 1967, as amended; and The Government Employee Rights Act of 1991 which amended the Civil Rights Act.

45.    Plaintiff received his Right to Sue Letter dated August 13, 2018 shortly subsequent thereto.

## COUNT I.

### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED,
### 42 U.S.C. § 2000e *et seq*

### RACE, COLOR, RELIGION, AGE AND NATIONAL ORIGIN, DISCRIMINATION, MAINTENANCE OF A HOSTILE WORK ENVIRONMENT and RETALIATION

### Kalim A. Bhatti vs. Caucus

46.     Plaintiff restates and realleges paragraphs 1 through 45 as though set forth here in full.

47.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, et seq. as amended by the Civil Rights Act of 1991 pertaining to government employees ("Title VII), makes it unlawful to discriminate and/or retaliate against any individual in the terms, conditions, or privileges of employment on the basis of race, color, religion, age or national origin.

48.     Discrimination that creates an abusive and hostile work environment, such that the conditions of employment are altered, is actionable under Title VII.  In order to establish a hostile work environment, five factual elements must be established: (1) that the employee suffered intentional discrimination because of his or her protected characteristic; (2) that the discrimination detrimentally affected him or her; (3) that the discrimination was pervasive and regular; (4) that the discrimination would detrimentally affect a reasonable person in the same position as the employee; and (5) that respondeat superior liability exists. In the totality of circumstances described in the section entitled "FACTS" set forth hereinbefore, the foregoing five elements are established.

49.     Defendant Caucus is responsible for retaliating against Plaintiff as a result of his complaints of discriminatory treatment and a hostile work environment.

50.     Those including Ms. Jones, Mr. Dille and Mr. Miskin who engaged on behalf of the Caucus as above-described when it came to the Plaintiff, acted knowingly, with malice and in reckless disregard of Plaintiff's federal and state protected rights.

51.     Defendant Caucus is liable for discrimination alleged herein under the doctrine of *respondeat superior* due to the actions and statements of its managers and employees.

52.     Defendant Caucus is liable for the acts of management and Plaintiff's co-workers and superiors because it knew of their proclivities permitting discrimination and a hostile work environment to exist, but did nothing about it.

53.     Defendant Caucus is liable for the acts alleged herein because its leadership established the culture which encouraged discrimination, harassment and retaliation.

54.     Based upon the foregoing facts, Defendant Caucus has discriminated against Plaintiff on the basis of protected characteristics and has retaliated against him for standing up for himself and has deprived him of his rights in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et. seq. as amended.

55.     Defendant Caucus' conduct has been disparate, intentional, deliberate, willful and conducted in callous disregard of the rights of the Plaintiff.

56.     Despite its stated policies which provide that discrimination is not to be tolerated. Defendant Caucus' actual policies and/or practices when it comes to discrimination and harassment have produced a disparate impact against the named Plaintiff with respect to the terms and conditions of employment.

57.     By reason of Defendant Caucus' discrimination, Plaintiff is entitled to all legal and equitable remedies available.

## COUNT II.

**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED,**
**42 U.S.C. § 2000e *et seq***
**POST EMPLOYMENT RETALIATION**

### Kalim A. Bhatti vs. Caucus

58.     Plaintiff restates and realleges paragraphs 1 through 57 as though set forth here in full.

59.     Defendant Caucus's retaliation against Plaintiff did not stop with his firing.

60.     After his firing Plaintiff filed a charge with the EEOC.

61.     Section 704 of Title VII, cited by this Court in *Stezzi v. Citizens Bank of Pennsylvania*, Civil Action No. 10-4333 at page four reads as follows:

> It shall be unlawful employment practice for an employer to discriminate against any of his employees…because he has opposed any practice made an unlawful employment practice… or because he has made a charge… under this subchapter.

62.     As in *Strezzi,* Plaintiff contends that Defendant Caucus has violated Title VII in opposing his being granted unemployment benefits despite clear court precedent and plain statutory wording and applicable case law.

63.     In addition, Defendant Caucus' actions have impaired his ability to gain suitable employment.

64.     Accordingly, Plaintiff is entitled all applicable damages under Title IX for Defendant Caucus' post-employment retaliation.

## COUNT III.

**VIOLATION OF FIRST AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION and THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. SEC. 1983**

### Kalim A. Bhatti vs. All Defendants

65.     Plaintiff restates and realleges paragraphs 1 through 64 as though fully set forth herein.

66.     Defendants have discriminated against the Plaintiff by depriving him of his rights, privileges and immunities secured by the Constitution or laws of the United States as applied to the States pursuant to the Fourteenth Amendment. Specifically, in firing Plaintiff, Defendants have abridged his First Amendment rights to the free exercise of religion and his right of free speech.

67.     Defendants' conduct has been intentional, deliberate, willful, and conducted in callous disregard of Plaintiff's rights.

68.     To establish a claim for First Amendment retaliation, a Plaintiff must show: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action.". Thomas v. Independence Twp., 463 F.3d 285. 296 (3d/ Cir 2006) (further citation omitted).

69.     Accordingly, Plaintiff has engaged in constitutionally protected activities and Defendants have retaliated against him for both engaging in protected speech and related protected activities.

70.     As a direct and proximate result of this retaliatory action, Plaintiff suffered and will continue to suffer embarrassment, humiliation, financial harm, physical and psychological harm, and pain and suffering, some or all of which may be permanent.

71.     As a direct and proximate result of this retaliatory action, Plaintiff has incurred attorneys' fees and other costs.

## COUNT IV.

### VIOLATION OF THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981

#### Kalim A. Bhatti vs. All Defendants

72.     Plaintiff restates and realleges paragraphs 1 through 71 as though set forth here in full.

73.     Defendants have discriminated against the Plaintiff by denying him the same rights as are enjoyed by other employees, namely, white employees with respect to performance, terms, location, conditions, benefits, privileges, promotion, discipline and emoluments of their employment relationship with Defendant Caucus in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

74.     Defendants' conduct has been intentional, deliberate, willful, and conducted in callous disregard of the rights of the named Plaintiff.

75.     By reason of the continuous nature of Defendants' discriminatory conduct, persistent throughout the employment of Plaintiff, Plaintiff is entitled to application of the continuing violation doctrine to all of the violations alleged herein.

76.     By reason of Defendants' discrimination, the named Plaintiff is entitled to all legal and equitable remedies available under § 1981, including but not limited to

damages for mental anguish and punitive damages.  Plaintiff is also entitled to award of all relief available under 42 U.S.C §1988.

## COUNT V.

## CONSIPRACY TO VIOLATE CIVIL RIGHTS

### Kalim A. Bhatti vs. All Defendants

77.     Plaintiff restates and realleges paragraphs 1 through 76 as though fully set forth herein.

78.     Upon information and belief, the individually named Defendants entered into an agreement to deprive Plaintiff's civil rights and/or communicated with each other in such a manner that their agreement can be inferred.

79.     Upon information and belief, the broad objective of their conspiracy was to first penalize Plaintiff and then rid the Caucus of Plaintiff in violation of his civil rights.

80.     On information and belief, the evaluations and reviews of Plaintiff were furthered by these Defendants conducting biased and sham investigations with sham facts to create a pretext for disciplinary actions against Plaintiff, so as to defame and discredit Plaintiff. Eventually, these Defendants succeeded by having Plaintiff fired.

81.     While those elected leaders of the Caucus may not have engaged in the conspiracy, they provided and allowed an atmosphere where the conspirators were able to effectuate their conspiracy against Plaintiff.

## COUNT VI.

## FIRING CONTRARY TO PUBLIC POLICY

### Kalim A. Bhatti vs. All Defendants

82.     Plaintiff restates and realleges paragraphs 1 through 81 as though fully set forth herein.

83.     As described hereinabove, Plaintiff was discharged from his employment at Defendant Caucus despite its clearly articulated policy of protecting the rights of its employees and not discriminating against them, all matters which are in the public interest.

84.     Under Pennsylvania law there is an exception to the employment at-will doctrine if: (a) an employer discharges an employee, (b) in retaliation for the employee's activities and (c) that the discharge violates a clear mandate of public policy. One's characteristics under the law and the free exercise of one's religion are certainly in the public interest.

85.     As stated by the Supreme Court of Pennsylvania in CISCO v. United Parcel Services, Inc., 328 Pa. Super. 300,306, 476 A.2d 1340,1343 (1984), "The sources of public policy [which may limit the employer's right of discharge] include legislation; administrative rules, regulation, or decision; and judicial decision. In certain instances, a professional code of ethics may contain an expression of public policy." The very unique status of the Caucus, together with its responsibilities and employee handbook certainly related to public policy.

86.     It was Plaintiff's understanding that he complied with respect to the dictates of the handbook.

87.     Accordingly, Plaintiff was discharged contrary to public policy, in retaliation for his protected characteristics and the free exercise of his religion.

## COUNT VII.

### FALSE LIGHT

### Kalim A. Bhatti vs. All Defendants

88.     Plaintiff restates and realleges paragraphs 1 through 87 as though fully set forth herein.

89.     Pennsylvania Courts have adopted and followed the definition of the tort of "false light" as articulated by the Restatement (Second) of Torts Sections 652E. The tort is defined as follows:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

90.     As is clearly stated in Section 652E, a publication is actionable for the tort of false light "if it is not true, is highly offensive to a reasonable person and is publicized with knowledge or in reckless regard of its falsity"

91.     Defendants have placed Plaintiff in a false light by their having him escorted publicly out of the Capitol in a fashion that was highly offensive and done maliciously, with knowledge of what the reaction would be of those who witnessed it.

92.     As Defendants have placed Plaintiffs in a false light willfully, wantonly, and with malice, Plaintiff is entitled to punitive damages together with all other applicable damages.

## COUNT VIII.

### NEGLIGENT SUPERVISION OF NAMED DEFENDANTS

### Kalim A. Bhatti vs. Defendant Caucus

93.     Plaintiff repeats and reasserts the allegations contained in paragraphs 1 through 92 as though fully set forth herein.

94.     The above-named Caucus through its elected leadership was negligent in its supervision of the other Defendants, thereby allowing them to engage in the conduct heretofore alleged.

95.     The common law tort of negligence requires that a defendant (1) owe a duty of care to the plaintiff, (2) that the defendant failed to perform the duty of care, (3) the failure was the proximate cause of the plaintiff's damages, and (4) the plaintiff sustained an actual loss or injury.

96.     Furthermore, it has long been the law in Pennsylvania that an employer may be liable in negligence if it knew or should have known that an employee was dangerous, careless, or incompetent and such employment might create a situation where the employee's conduct would harm a third person, in this case Plaintiff.

97.     Given the fact that Defendants promulgated a code of conduct set forth in the Caucus Handbook, Defendants owed a duty of care to Plaintiff. Given his specific protected characteristics and the fact that he was a Muslim, it was reasonably foreseeable that the named Defendants would occasion harm to

22

Plaintiff. Moreover, upon information and belief, the elected leaders of the Caucus were purportedly informed of Plaintiff's firing before it took place or ratified it thereafter. In allowing the firing and manner in which it was conducted, that duty of care was not performed. The negligence of the Caucus elected leaders was the proximate cause of Plaintiff's actual loss and injury.

98.      As the leaders of the Caucus have acted willfully, wantonly, and with malice, Plaintiff is entitled to punitive damages together with all other applicable damages.

## **RELIEF REQUESTED**

WHEREFORE, this civil action seeks on behalf of Plaintiff, legal and equitable relief including the following:

a.   A declaratory judgment declaring that Defendants maintained an illegal environment, discriminated against him and has illegally retaliated against Plaintiff in violation of civil and constitutional rights.

b.   Back and front pay for Plaintiff and payment of compensatory damages, (in lieu of reinstatement), punitive damages where applicable, together with attorney's fees and the costs of suit to Plaintiff, and any other available damages, all in excess of the applicable threshold, in an amount to be determined at trial pursuant to Count I.

c.   Back and front pay for Plaintiff and payment of compensatory damages, (in lieu of reinstatement), punitive damages where applicable, together with attorney's fees and the costs of suit to Plaintiff, and any other available damages, all in excess of the applicable threshold, in an amount to be determined at trial pursuant to Count II.

d. With respect to Count III, as a result of intentional and willful violations of Plaintiff's right under the First Amendment to the U.S. Constitution, payment for all injuries and damages including compensatory damages, punitive damages (where appropriate) back pay and front pay for losses suffered, and all counsel fees and costs incurred by Plaintiff. As Plaintiff's protected activity was a substantial factor motivating Defendants, thus violating 42 U.S.C. Section 1983, Defendants are liable for any and all damages permitted under 42 U.S.C. Section 1988.

e. With respect to Court IV, as a result of intentional and willful violations of Plaintiff's equal rights under the law pursuant to 42 U.S. Code Section 1981 and the U.S. Constitution, payment for all injuries and damages including compensatory damages, punitive damages (where appropriate) back pay and front pay for losses suffered, and all counsel fees and costs incurred by Plaintiff. As Plaintiff's protected activity was a substantial factor motivating Defendants, thus violating 42 U.S.C. Section 1981, Defendants are liable for any and all damages permitted under 42 U.S.C. Section 1988.

f. Payment of compensatory and punitive damages, (where appropriate) back pay and front pay for losses suffered, and all counsel fees and costs incurred by Plaintiff, as a result of Defendants' Conspiracy to Violate Plaintiff's civil rights as per Count V.

g. Payment of compensatory and punitive damages (where appropriate) together with attorney's fees and the costs of suit to Plaintiff for the harm suffered by Plaintiff as a result of Plaintiff's common law claim of being Fired Contrary to Public Policy as per Count VI.

h. With respect to Count VII payment of all legal and equitable remedies, including punitive damages, where appropriate, for placing Plaintiff in a False Light.

i.   Payment of compensatory and punitive damages (where appropriate) together with attorney's fees and the costs of suit to Plaintiff for the harm suffered by Plaintiff as a result of Plaintiff's common law claim of Negligent Supervision of as per Count VIII.

j.   Any and all Recoverable costs of all proceedings, including reimbursement for deposition fees, expert witness fees, travel expenses, and all other expenses incurred in the representation of Plaintiff.

k.   Pre and post judgment interest.

l.   An allowance to compensate for negative tax consequence.

m.   A permanent injunction enjoining Defendant Caucus, its directors, officers, employees, agents, successors, heirs and assigns and all persons in active concert or participation with them, from engaging in cover-ups and retaliatory action against employees who exercise their legal rights by coming forward with concerns.

n.   Order Defendant Caucus to institute and implement for its members and employees, training programs stressing the importance of respecting First Amendment and Civil rights.

o.   Order Defendant Caucus to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including but not limited to, the pre-textual reasons cited for adverse actions, discipline, and discharge.

p.   Award such other relief as is equitable and just.

q.   Retain jurisdiction until such time as the Court is satisfied that Defendants have remedied the practices complained of herein and is deemed to be in full compliance with the law.

## JURY DEMAND

The Plaintiff demands trial by jury of all issues triable of right to a jury.


## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in

controversy is not the subject of any other action pending in any court or of a pending

arbitration proceeding.

Respectfully Submitted,

/s/ Mark D. Schwartz

Mark D. Schwartz, Esquire
P.O. Box 330
Bryn Mawr, PA  19010-0330
Telephone & Fax: 610 525-5534
Email: MarkSchwartz6814@gmail.com
Pa. I.D. #30527

Date: November 9, 2018          Counsel for Plaintiff, Kalim A. Bhatti

## VERIFICATION

I, Kalim Bhatti., do hereby verify that I am the Plaintiff in this matter and that the facts contained in the foregoing Plaintiff's Complaint are true and correct to the best of my knowledge, information and belief.  I further understand that these statements are made subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

11/9/2018
DATE

Kalim Bhatti.